SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. William T. Liepe (A-7-18) (080788)**

**Argued March 12, 2019 -- Decided August 6, 2019**

**PATTERSON, J., writing for the Court.**

The Court reviews consecutive terms of incarceration imposed on defendant William T. Liepe for convictions arising from a motor-vehicle accident he caused when driving while intoxicated.

After drinking six to ten beers, defendant drove his Ford Explorer south on Cologne Avenue in Mays Landing at approximately 1:00 p.m. Travelling at about forty-five miles per hour, defendant struck the rear end of a Honda Accord waiting to make a left turn. The car was driven by a thirty-five-year-old man, M.G., who was driving his eleven-year-old son, M.J.G., and a nine-year-old family friend, R.S., to a softball game. The collision sent the Honda into the northbound lane, where it was struck by a Cadillac Escalade driven by a woman who was taking her mother, R.V., and her two children on a shopping trip. The second collision sent the car into the parking lot of the softball field.

The accident killed R.S. M.J.G. was permanently paralyzed from the waist down as a result of the accident. He is confined to a wheelchair and will require continuous medical care for the rest of his life. M.G. also sustained very serious injuries: he broke many bones, had injured organs, and required a forty-five day hospitalization with multiple surgeries. The driver of the Cadillac and her children were unharmed in the accident; however, R.V. sustained back and neck injuries.

Defendant was tried before a jury and was convicted on all counts. The trial court considered the aggravating and mitigating factors under N.J.S.A. 2C:44-1(a) and (b). It found three aggravating factors, to which it accorded varying weight, and one mitigating factor, to which it accorded moderate weight. The court concluded that the aggravating factors outweighed the mitigating factors. Citing N.J.S.A. 2C:44-5, State v. Yarbough, 100 N.J. 627, 643-44 (1985), and State v. Carey, 168 N.J. 413, 427-31 (2001), the trial court addressed the question of whether defendant's terms of incarceration for his individual offenses should run concurrently or consecutively to one another. The court noted that, although it was mindful of defendant's age, its goal was "to impose an appropriate sentence for the crimes committed and not one designed to assure his release prior to the end of his life."

1

The trial court sentenced defendant to three consecutive terms of imprisonment: twenty years for the first-degree aggravated manslaughter of R.S.; seven years for the second-degree aggravated assault of M.J.G.; and five years for the second-degree aggravated assault of M.G. Each of the three terms was subject to an eighty-five percent period of parole ineligibility. For the fourth-degree assault by auto of R.V., the court imposed a term of one year's imprisonment to be served concurrently with defendant's other terms of incarceration. Defendant's aggregate sentence was thirty-two years' incarceration with a parole ineligibility period of twenty-seven years.

The Appellate Division affirmed defendant's convictions but vacated his sentence and remanded for resentencing. 453 N.J. Super. 126, 142 (App. Div. 2018). The Appellate Division observed that defendant would be ineligible for parole until he reached the age of eighty-nine and found that sentence "shocking to the judicial conscience." Id. at 133, 135. The Appellate Division "discern[ed] from the [trial] judge's decision to impose consecutive terms that he believed Carey required consecutive terms -- a conclusion the Court expressly rejected" in Carey. Id. at 136. The Appellate Division also construed the holding of Carey to be limited to cases in which a defendant's conduct killed more than one victim, and thus determined Carey to be inapplicable to a single-fatality case such as this. Id. at 140-41. The Appellate Division stated that defendant's sentence "has not been shown to be in accord with any other sentence imposed in similar circumstances" and opined that this disparity impairs "the overarching Yarbough goal that there be uniformity in sentencing." Id. at 142. In support of that contention, the Appellate Division attached an appendix in which it "synopsized all available post-Carey decisions . . . identifying sentences imposed in multiple-victim vehicular homicide cases." Id. at 139 n.5, 142-45.

The Court granted the State's petition for certification. 235 N.J. 295 (2018).

**HELD:** The trial court properly applied the factors identified in Yarbough for the imposition of consecutive sentences, and defendant's sentence is consistent with the principles stated in Carey and does not shock the judicial conscience. The Court reverses the Appellate Division's judgment and reinstates the sentence that the trial court imposed.

1. Appellate review of a sentencing determination is limited to consideration of: (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless clearly unreasonable so as to shock the judicial conscience. The sentencing provisions of the New Jersey Code of Criminal Justice are based on notions of proportionality and focus on the gravity of the offense. In Yarbough, the Court provided guidance to trial courts determining whether to impose concurrent or consecutive terms of incarceration, 100 N.J. at 636-37, and identified guidelines for that decision, id. at 643-44. (pp. 15-18)

2

2.  In Carey, the Court reinstated the consecutive sentences imposed by the trial court for two counts of vehicular homicide for the deaths of two people in a car accident caused by an intoxicated driver.  168 N.J. at 420-21, 431.  The Court concluded that "[c]rimes involving multiple deaths or victims who have sustained serious bodily injuries represent especially suitable circumstances for the imposition of consecutive sentences," id. at 428, and held that when a judge sentences a defendant in a vehicular homicide case, "the multiple-victims factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms when multiple deaths or serious bodily injuries have been inflicted upon multiple victims by the defendant," id. at 429-30.  The Court did not impose a presumption in favor of consecutive terms.  It simply observed that when a sentencing court compares the harm inflicted by intoxicated driving in the multiple-victim setting with the harm that would have resulted from the offense were there only a single victim, it is likely to conclude that the harm in the former setting is "distinctively worse" than that in the latter.  See id. at 428.  Like any Yarbough analysis, the sentencing court's determination regarding consecutive and concurrent terms in the vehicular homicide setting turns on a careful evaluation of the specific case.  (pp. 18-24)

3.  Nothing in the trial court's determination in this case suggests that it reached its decision through the application of a presumption, contrary to the Appellate Division's suggestion.  453 N.J. Super. at 135-36.  The court deemed the impact of defendant's conduct on both R.S. and M.J.G. to be the "worst consequences imaginable," and observed that the impact of defendant's conduct on M.G. to be "extremely serious."  To the trial court, the imposition of concurrent sentences for defendant's offenses would not ensure accountability.  The trial court considered the fairness of the aggregate sentence, taking into account defendant's age.  It properly viewed its primary obligation, however, not to ensure that defendant would live long enough to be released on parole, but to craft a sentence warranted by the offenses.  The Court finds no deviation from the Code's sentencing objectives in the trial court's determination, and accordingly finds no error.  Nor does the Court find the sentence imposed by the trial court to shock the judicial conscience.  The Court has never imposed on a trial court the obligation to demonstrate that a sentence comports with sentences imposed by other courts in similar cases.  The Yarbough guidelines promote proportionality not by a comparative analysis of the sentencing practices of different courts, but by focusing the trial court on the "facts relating to" the defendant's crimes.  Carey, 168 N.J. at 423; see also Yarbough, 100 N.J. at 643-44.  Here, the trial court properly focused on the case before it, and on the devastating impact of defendant's crimes.  (pp. 24-27)

**The judgment of the Appellate Division is reversed, and the sentence imposed by the trial court is reinstated.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion.**

3

SUPREME COURT OF NEW JERSEY

A-7 September Term 2018

080788

State of New Jersey,

Plaintiff-Appellant,

v.

William T. Liepe,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
453 N.J. Super. 126 (App. Div. 2018).

| Argued | Decided |
|---|---|
| March 12, 2019 | August 6, 2019 |

Jennifer E. Kmieciak, Deputy Attorney General, argued
the cause for appellant (Gurbir S. Grewal, Attorney
General, attorney; Jennifer E. Kmieciak and Sarah E.
Elsasser, Deputy Attorney General, of counsel and on the
briefs).

Jill R. Cohen argued the cause for respondent (Jill R.
Cohen, on the briefs and William T. Liepe, pro se, on the
supplemental letter brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we review consecutive terms of incarceration imposed on

defendant William T. Liepe.  Defendant was convicted of one count of first-

degree aggravated manslaughter, N.J.S.A. 2C:11-4(a); two counts of second-degree aggravated assault, N.J.SA. 2C:12-1(b)(1); two counts of third-degree assault by auto, N.J.S.A. 2C:12-1(c)(2); and one count of fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(1).  The convictions arose from a motor-vehicle accident in which defendant, driving while intoxicated, collided with another vehicle from behind and propelled it into oncoming traffic, causing a second collision.  The accident killed one child, permanently paralyzed another child, seriously injured the driver of the car struck by defendant's car, and injured a passenger in the vehicle that was traveling in the opposite lane.

After a jury convicted defendant, the trial court imposed three consecutive terms of imprisonment:  a twenty-year term for aggravated manslaughter; a seven-year term for one count of aggravated assault; and a five-year term for another count of aggravated assault.  Defendant was sentenced to an aggregate term of thirty-two years' incarceration, with a parole ineligibility period of twenty-seven years.

Defendant appealed.  The Appellate Division affirmed defendant's convictions but vacated his sentence and remanded for resentencing.  State v. Liepe, 453 N.J. Super. 126, 142 (App. Div. 2018).  It held that the trial court abused its discretion in imposing consecutive terms and that defendant's

aggregate sentence shocked the judicial conscience. Id. at 135-41. We granted the State's petition for certification.

We hold that the trial court properly applied the factors identified in State v. Yarbough, 100 N.J. 627 (1985), for the imposition of consecutive sentences, and that defendant's sentence is consistent with the principles stated in State v. Carey, 168 N.J. 413 (2001). We do not share the Appellate Division's view that the trial court misapplied those principles, or that defendant's sentence shocks the judicial conscience. Accordingly, we reverse the Appellate Division's judgment and reinstate the sentence that the trial court imposed.

## I.

## A.

We derive our summary of the facts from the record of defendant's trial and sentencing.

On the morning of April 10, 2011, defendant, then fifty-eight years old, drove his Ford Explorer to a bar in Egg Harbor City, where he drank two beers. He proceeded to a second location, unidentified in the record, and drank between four and eight additional beers.

At approximately 1:00 p.m., defendant drove south on Cologne Avenue in Mays Landing. Ahead of defendant's car in the southbound lane was a

3

Honda Accord driven by a thirty-five-year-old man, M.G., who was driving his eleven-year-old son, M.J.G., and a nine-year-old family friend, R.S., to a softball game. The older boy, M.J.G., was in the front passenger seat of the Honda Accord, and the younger boy, R.S., was in the back seat of the car.

M.G. intended to take a left turn from Cologne Avenue into the driveway of the softball field, but he paused before turning because of traffic in the opposite lane. According to a statement that he later gave to a police officer, defendant briefly took his eyes off the road to look at the softball field. Defendant's Ford Explorer, traveling at about forty-five miles per hour, collided with the rear of M.G.'s Honda Accord, sending the Honda into the northbound lane. There, the Honda was struck by a Cadillac Escalade driven by a woman who was taking her mother and her two children, ages fifteen and two, on a shopping trip. The second collision sent M.G.'s car into the parking lot of the softball field. Defendant's car traveled off the road and crashed into a tree.

The accident killed R.S., the nine-year-old passenger in M.G.'s car. The eleven-year-old passenger, M.J.G., was permanently paralyzed from the waist down as a result of the accident, and is confined to a wheelchair. Because of the injuries that he sustained in the accident, M.J.G. will require continuous medical care for the rest of his life.

4

M.G. also sustained very serious injuries.  He broke five vertebrae, all of his ribs, his collarbone, and his shoulder blade.  He shattered his pelvis, suffered a collapsed lung, injured his diaphragm, and sustained damage to his spleen that required a splenectomy.  During a forty-five day hospitalization at a trauma center, M.G. underwent five surgeries and was for a time in a medically induced coma.  When M.G. left the hospital, he was not yet ambulatory.  He was eventually able to walk with a cane after an extended stay in a rehabilitation facility.  M.G. has a metal plate and four screws in his neck, a metal rod in his back, and metal implants in his pelvis.

The driver of the Cadillac and her children were unharmed in the accident; however, the driver's mother, R.V., tore her rotator cuff and sustained back and neck injuries that continued to cause pain at the time of her testimony at defendant's trial.

B.

1.

Defendant was indicted for first-degree aggravated manslaughter[1] and second-degree vehicular homicide, based on the death of R.S.  He was also

---

[1]  The trial court granted defendant's motion to dismiss the first-degree aggravated manslaughter count of his indictment on the grounds that the State failed to present evidence of defendant's recklessness, other than evidence of defendant's intoxication.  The State presented additional evidence to a second grand jury, which indicted defendant for the same offenses, but the trial court

charged with second-degree aggravated assault and third-degree assault by auto, both arising from the injuries to M.G.; second-degree aggravated assault and third-degree assault by auto, both arising from the injuries to M.J.G.; and fourth-degree assault by auto, arising from the injuries to R.V.[2]

Defendant was tried before a jury. The State presented the testimony of law enforcement officers, medical professionals, witnesses to the April 10, 2011 accident, and an employee at the bar where defendant drank beer on the morning of the accident. It offered opinion testimony by experts in accident reconstruction, pharmacology, and toxicology. The State presented evidence that defendant's blood alcohol content (BAC) was .192 when a blood sample was taken from him approximately one hour and fifteen minutes after the accident. Its expert toxicologist estimated that at the time of the accident, defendant's BAC was approximately .207.

The jury convicted defendant of all charges.

---

again dismissed the aggravated manslaughter count. Although the Appellate Division denied the State's motion for leave to appeal, this Court granted leave to appeal and summarily remanded the matter to the Appellate Division for its consideration of the motion. The Appellate Division then reinstated the aggravated manslaughter charge.

[2] Defendant received summonses for five motor-vehicle offenses: (1) reckless driving, N.J.S.A. 39:4-96; (2) driving while intoxicated, N.J.S.A. 39:4-50; (3) careless driving, N.J.S.A. 39:4-97; (4) failure to wear a seatbelt, N.J.S.A. 39:12-15; and (5) possession of an open container of alcohol in a motor vehicle, N.J.S.A. 39:4-51b.

2.

After merger of two of defendant's offenses, the trial court sentenced defendant for one count of first-degree aggravated manslaughter, two counts of second-degree aggravated assault, and one count of fourth-degree assault by auto.

The trial court considered the aggravating and mitigating factors. It found aggravating factor two, N.J.S.A. 2C:44-1(a)(2) ("[t]he gravity and seriousness of harm inflicted on the victim"), and afforded it "substantial weight" with respect to the two counts of second-degree aggravated assault, citing both M.G.'s and M.J.G.'s serious injuries, as well as M.J.G.'s life-altering permanent injury. The trial court found aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense"), due to defendant's "poor driving record,"[3] as well as his history of alcohol abuse, but afforded that factor "only slight weight." Finally, the trial court found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"), relying on both

---

[3] Defendant was convicted in 1977 of driving while intoxicated. His driving record also revealed five prior accidents, including one in which he left the scene, and two license suspensions. Defendant's other motor vehicle offenses included stop sign violations, speeding, unsafe operation of a motor vehicle, and obstruction of the passage of another vehicle.

7

general and specific deterrence, but viewing general deterrence to be the more compelling concern in this case.

Noting defendant's lack of prior criminal offenses and his age -- he was sixty-two years old at sentencing -- the trial court found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"). The court gave that mitigating factor only moderate weight, however, due to defendant's history of motor vehicle violations. The court declined defendant's request that it also find mitigating factor two, N.J.S.A. 2C:44-1(b)(2) ("[t]he defendant did not contemplate that his conduct would cause or threaten serious harm"), and mitigating factor ten, N.J.S.A. 2C:44-1(b)(10) ("[t]he defendant is particularly likely to respond affirmatively to probationary treatment"). The trial court concluded that the aggravating factors outweighed the mitigating factors.

Citing N.J.S.A. 2C:44-5, Yarbough, 100 N.J. at 643-44, and Carey, 168 N.J. at 427-31, the trial court addressed the question of whether defendant's terms of incarceration for his individual offenses should run concurrently or consecutively to one another. The court cited several of the factors set forth in Yarbough, including the factor that the crimes "involve[] multiple victims."

8

100 N.J. at 644. It relied on Carey for the principle that crimes such as the one at issue here -- involving multiple deaths or seriously injured victims -- "represent especially suitable circumstances for the imposition of consecutive sentences." See 168 N.J. at 428. The trial court cited the Court's holding in Carey that the "multiple victims" factor is "entitled to great weight and ordinarily should result in the imposition of at least two consecutive terms." (citing id. at 429). It reasoned:

> In this case, there are four victims. In terms of the gravity of harm inflicted, two of them suffered the worst consequences imaginable. [R.S.] lost his life, [M.J.G.] faces life in a wheelchair. Certainly, any sense of justice would require that the offense involving [M.J.G.] should receive a sentence consecutive to the sentence imposed for the death of [R.S.] However, the injuries suffered by [M.G.] are also extremely serious. As indicated, requiring several weeks of a hospital stay, numerous surgeries, he likely will not fully recover. Presently walks with the aid of a cane and limp. In this court's view, the sentence imposed for the offense against him also must be consecutive in order to accomplish accountability for the entire gravamen of the results of defendant's conduct.

The court accordingly found that defendant should be sentenced to consecutive sentences for his aggravated manslaughter conviction and his two aggravated assault convictions. It decided to impose a concurrent sentence for defendant's conviction of fourth-degree assault by auto, in which the victim, R.V., was less seriously injured than M.G. or M.J.G.

9

The trial court stated that it had considered defendant's age and his appeal "that the court not impose a sentence which would amount to one of death while in prison." It acknowledged that it was required to consider the effect of the eighty-five percent parole disqualifier prescribed by the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). The court noted, however, that although it was mindful of defendant's age, its goal was "to impose an appropriate sentence for the crimes committed and not one designed to assure his release prior to the end of his life."

The trial court sentenced defendant to three consecutive terms: a term of twenty years' imprisonment for first-degree aggravated manslaughter; a term of seven years' imprisonment for the count of second-degree aggravated assault in which the victim was M.J.G.; and a term of five years' imprisonment for the count of second-degree aggravated assault in which the victim was M.G. Each of the three terms was subject to NERA's eighty-five percent period of parole ineligibility. For defendant's conviction of fourth-degree assault by auto, the court imposed a term of one year's imprisonment to be served concurrently with defendant's other terms of incarceration.

Accordingly, defendant's aggregate sentence was thirty-two years' incarceration with a parole ineligibility period of twenty-seven years.

3.

Defendant appealed his convictions and sentence. The Appellate Division affirmed defendant's convictions, but vacated the trial court's sentencing determination and remanded for resentencing. Liepe, 453 N.J. Super. at 135-41.

The Appellate Division observed that by virtue of defendant's consecutive sentences, he faced up to thirty-two years in jail and would be ineligible for parole until he reached the age of eighty-nine. Id. at 135. It considered that sentence "shocking to the judicial conscience" and opined that the sentence was "based on the judge's misunderstanding of applicable legal principles about when consecutive terms are warranted." Id. at 133.

The Appellate Division acknowledged that in Carey, the Court stated that when an offender's use of a motor vehicle causes harm to multiple victims, the sentencing court should "ordinarily" impose consecutive terms. Id. at 135-36 (quoting Carey, 168 N.J. at 429-30). It urged sentencing courts not to "assume from this statement that there exists a presumption in favor of consecutive terms." Id. at 136. The Appellate Division "discern[ed] from the [trial] judge's decision to impose consecutive terms that he believed Carey required consecutive terms -- a conclusion the Court expressly rejected" in Carey. Ibid.

11

The Appellate Division also construed the holding of <u>Carey</u> to be limited to cases in which a defendant's conduct killed more than one victim, and thus determined <u>Carey</u> to be inapplicable to a single-fatality case such as this. <u>Id.</u> at 140-41. It considered this case to present less egregious circumstances than did <u>Carey</u>, in which the defendant "revealed a conscious disregard for societal norms and an enhancement of the danger generated by his intoxication." <u>Id.</u> at 138.

The Appellate Division stated that defendant's sentence "has not been shown to be in accord with any other sentence imposed in similar circumstances" and opined that this disparity impairs "the overarching <u>Yarbough</u> goal that there be uniformity in sentencing." <u>Id.</u> at 142. In support of that contention, the Appellate Division attached an appendix in which it "synopsized all available post-<u>Carey</u> decisions -- some reported, most unreported -- identifying sentences imposed in multiple-victim vehicular homicide cases." <u>Id.</u> at 139 n.5, 142-45.

4.

We granted the State's petition for certification. 235 N.J. 295 (2018). We denied defendant's cross-petition for certification, in which he challenged the Appellate Division's decision affirming his conviction. 235 N.J. 211 (2018).

12

II.

A.

The State urges the Court to reinstate the sentence that the trial court imposed. It argues that in <u>Carey</u>, the Court prescribed a presumption in favor of consecutive sentences where an intoxicated driver causes multiple fatalities or injuries. The State observes that the trial court did not impose the maximum term for any of defendant's offenses and properly sought to impose a fair sentence for defendant's crimes. The State contends that the Appellate Division unfairly faulted the trial judge for failing to compare defendant's sentence to sentences imposed on other defendants and stresses that the cases cited in the Appellate Division's appendix involved less serious crimes than those at issue here.

B.

Defendant counters that his sentence shocks the judicial conscience because his conduct was no more serious than that of similarly situated defendants sentenced to more lenient terms. He contends that the facts of this case do not support a conviction for aggravated manslaughter and that the trial court should therefore have imposed no consecutive sentences. Defendant asserts that the trial court misconstrued <u>Yarbough</u> to mandate consecutive sentences in this case and cites the dissent in <u>Yarbough</u> for the proposition that

13

consecutive sentences are best used when the offender has committed offenses in a series of separate, unrelated episodes.

## III.

## A.

When it reviews a trial court's sentencing determination, an appellate court must not "substitute its judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014); State v. Lawless, 214 N.J. 594, 606 (2013). As the Court observed in State v. Roth, the "error which warrants modification of a sentence must amount to more than a difference of opinion or individual sentencing philosophy. The sentencing objectives are spelled out in the Code. It is deviation from those objectives, in view of the standards and criteria therein set forth, which constitutes error." 95 N.J. 334, 365 (1984) (quoting People v. Cox, 396 N.E.2d 59, 65 (Ill. App. Ct. 1979)).

Appellate review is thus limited to consideration of:

> (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."
>
> [State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011) (quoting Roth, 95 N.J. at 365-66).]

14

B.

1.

The sentencing provisions of the New Jersey Code of Criminal Justice are "based on notions of proportionality and desert," Carey, 168 N.J. at 422 (quoting Roth, 95 N.J. at 355), and "focus[] on the gravity of the offense," ibid. As the Court observed in Yarbough, "[t]he Code requires the sentencing court to look at the individual offender in balancing the defined aggravating and mitigating factors (including the defendant's prior record, cooperation, or the likelihood of further criminal conduct) to determine the range of the sentence, a parole disqualifier, or an extended term." 100 N.J. at 636 (citing N.J.S.A. 2C:43-6(a), (b); 2C:43-7; 2C:44-1(f)).

The Court noted in Yarbough, however, that "[t]he Code does not define with comparable precision the standards that shall guide sentencing courts in imposing sentences of imprisonment for more than one offense." Ibid. "With certain narrow exceptions," ibid. (citing N.J.S.A. 2C:44-5(b)(3), (c), (h)), "[t]he Code simply states that 'multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence,'" Carey, 168 N.J. at 422 (quoting N.J.S.A. 2C:44-5(a)).

This Court "recognized early on that investing unbridled discretion in sentencing judges would inevitably lead to a lack of sentencing uniformity."

15

Ibid.  Invoking legislative principles expressed in the Code, the Court in Yarbough sought to provide practical guidance to trial courts determining whether to impose concurrent or consecutive terms of incarceration.  100 N.J. at 636-37.  It observed that the Legislature premised the Code on "the concept that punishment of crime [should] be based primarily on principles of deserved punishment in proportion to the offense and not rehabilitative potential, and that in dispensing that punishment, our judicial system should attain a predictable degree of uniformity."  Ibid.

To further the Legislature's goals, the Court identified the following guidelines:

> (1)  there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2)  the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3)  some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
>> (a)  the crimes and their objectives were predominantly independent of each other;
>>
>> (b)  the crimes involved separate acts of violence or threats of violence;
>>
>> (c)  the crimes were committed at different times or separate places, rather than being committed

16

so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense.

[Yarbough, 100 N.J. at 643-44.][4]

The Court noted in Yarbough that a sentencing court "will normally make an overall evaluation of the punishment for the several offenses involved," and that the trial court's "goal is not an exercise 'whose object is to find the maximum possible period of incarceration for a convicted defendant.'" Id. at 646 (quoting People v. Price, 199 Cal. Rptr. 99, 109 (Ct. App. 1984)). It "recognize[d] that even within the general parameters that we have announced there are cases so extreme and so extraordinary" that they may warrant

---

[4] A sixth factor, which imposed "an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms," was eliminated by the Legislature in a 1993 amendment to the statute addressing concurrent and consecutive terms. L. 1993, c. 223, § 1; see N.J.S.A. 2C:44-5(a) (providing that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses"); see also Carey, 168 N.J. at 423 n.1.

17

"deviation from the guidelines." Id. at 647. Nonetheless, the Court encouraged courts sentencing defendants for multiple offenses to "strive for some degree of proportionality." Ibid.

2.

In Carey, the Court reviewed the sentence of a defendant who was convicted of two counts of vehicular homicide, contrary to N.J.S.A. 2C:11-5(b)(1), a second-degree offense, and two counts of fourth-degree assault by auto, contrary to N.J.S.A. 2C:12-1(c). 168 N.J. at 420. The defendant, intoxicated and traveling at an excessive speed, drove his pickup truck into oncoming traffic and collided with a car. Id. at 419-20. Two young people -- one a passenger in the defendant's car and one a passenger in the car that he struck -- died in the accident; the driver of the other car and another passenger in the defendant's car were seriously injured. Id. at 420. The trial court sentenced the Carey defendant to two consecutive seven-year terms of incarceration for the two counts of vehicular homicide, and two concurrent one-year terms of incarceration, which also ran concurrently to defendant's terms for vehicular homicide, for the two assault by auto convictions. Id. at 420-21.

The Appellate Division affirmed defendant's convictions but vacated his consecutive sentences for the two counts of vehicular homicide and remanded for the imposition of concurrent sentences for those offenses. Id. at 421.

This Court reversed the Appellate Division's judgment in Carey and reinstated the consecutive terms that the trial court had imposed. Id. at 431. The Court viewed the third Yarbough guideline, "the facts relating to the crimes," to "provide[] the clearest guidance to sentencing courts faced with a choice between concurrent and consecutive sentences." Id. at 423. The Court reiterated that the five "facts relating to the crimes" within that guideline "should be applied qualitatively, not quantitatively" and held that, consequently, "a sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences." Id. at 427-28. The Court required a judge conducting a Yarbough analysis to "determine whether the Yarbough factor under consideration 'renders the collective group of offenses distinctively worse than the group of offenses would be were that circumstance not present.'" Id. at 428 (quoting People v. Leung, 7 Cal. Rptr. 2d 290, 303 (Ct. App. 1992)).

Applying that principle to the case before it, the Court concluded that "[c]rimes involving multiple deaths or victims who have sustained serious bodily injuries represent especially suitable circumstances for the imposition

19

of consecutive sentences." Ibid. (citing, by way of example, State v. J.G., 261 N.J. Super. 409, 426 (App. Div. 1993), and State v. Russo, 243 N.J. Super. 383, 413 (App. Div. 1990)). It reasoned that "[t]he total impact of singular offenses against different victims will generally exceed the total impact on a single individual who is victimized multiple times." Id. at 429 (alteration in original) (quoting Leung, 7 Cal. Rptr. 2d at 303-04). The Court held that when a judge sentences a defendant in a vehicular homicide case, "the multiple-victims factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms when multiple deaths or serious bodily injuries have been inflicted upon multiple victims by the defendant." Id. at 429-30.

The Court concluded that the defendant's conduct in Carey, which resulted in two deaths and inflicted serious injuries on two other individuals, was much more damaging than conduct that kills or injures only one person, id. at 428-29, and that the trial court did not abuse its discretion when it imposed consecutive sentences, id. at 430-31. The Court recognized that the impact of multiple victims on sentencing "resonates most clearly in cases in which a perpetrator intentionally targets multiple victims" but applied that sentencing principle to "cases in which, as here, the defendant does not intend

to harm multiple victims but it is foreseeable that his or her reckless conduct will result in multiple victims." Id. at 429.

State v. Molina, a companion case to Carey, similarly involved an alcohol-related accident in which a car driven by the defendant, whose BAC was estimated to be .085, veered into oncoming traffic and collided with a vehicle in the opposite lane. 168 N.J. 436, 438-40 (2001). The accident killed the other driver and a passenger in that driver's vehicle, and injured two other passengers in that vehicle. Id. at 439. The defendant was convicted of two counts of vehicular homicide, elevated to a second-degree crime prior to defendant's sentencing, and was sentenced to two consecutive five-year terms of incarceration. Id. at 440-41. The Appellate Division affirmed the defendant's convictions and sentence. Id. at 441.

The Court affirmed the Appellate Division's judgment. Id. at 442. It determined that although the trial court had inadequately explained its reasoning, it did not abuse its discretion in premising consecutive sentences entirely on the fact that the defendant had killed multiple victims. Id. at 442-43. The Court reiterated in Molina the core principle of Carey: by virtue of their impact on multiple lives, crimes involving two or more victims are particularly suited for the imposition of consecutive sentences, so that "the multiple-victims factor is entitled to great weight and should ordinarily result

21

in the imposition of at least two consecutive terms." Id. at 442 (quoting Carey,

168 N.J. at 429-30).

3.

In this appeal, the Appellate Division held that our decisions in Carey

and Molina did not establish a presumption in favor of consecutive sentences

in cases involving alcohol-related accidents in which multiple victims are

killed or seriously injured. See Liepe, 453 N.J. Super. at 135-36. We agree.[5]

A presumption "is a conclusion that the law directs must be drawn," or a

"mandatory inference that discharges the burden of producing evidence as to a

fact (the presumed fact) when another fact (the basic fact) has been

established." Shim v. Rutgers, 191 N.J. 374, 386 (2007). This Court has

adopted presumptions in clear and unmistakable language in various settings.

See, e.g., In re Keri, 181 N.J. 50, 53, 63 (2004) ("establish[ing] a presumption

in favor of spend-down proposals" permitting "self-sufficient adult children

---

[5] We accordingly disagree with the comment made by the Appellate Division in another case, in which it opined that, in Carey, the Court created a "rebuttable presumption" that a trial court should impose consecutive sentences "when a drunken driver's use of a motor vehicle results in multiple victims." State v. Locane, 454 N.J. Super. 98, 131-32 (App. Div. 2018). We note that in Locane, the question as to whether the defendant's terms of incarceration should be consecutive or concurrent was moot at the time of the Appellate Division's decision because the defendant in that case had "completed service of [her] eighteen-month sentence" for one of her offenses and was "not on parole for that offense." Id. at 131.

who serve as their incompetent parents' legal guardians" to "transfer to themselves all or part of their parents' assets in order to hasten their parents' eligibility for Medicaid benefits"); Coffman v. Keene Corp., 133 N.J. 581, 603 (1993) ("[W]e now hold that . . . in a product-liability case based on a failure to warn, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning had one been provided.").

There is no such language in N.J.S.A. 2C:44-5 or our case law. When the Court held in Carey that, in vehicular homicide cases in which more than one victim has been killed or seriously injured, "the multiple-victims factor" should "ordinarily result in the imposition of at least two consecutive terms," 168 N.J. at 429-30, it did not impose a presumption in favor of consecutive terms. It simply observed that when a sentencing court compares the harm inflicted by intoxicated driving in the multiple-victim setting with the harm that would have resulted from the offense were there only a single victim, it is likely to conclude that the harm in the former setting is "distinctively worse" than that in the latter. See id. at 428. As the Court did "not adopt a per se rule" of consecutive sentences in cases such as this, id. at 419, it adopted no presumption governing such cases. Like any Yarbough analysis, the sentencing court's determination regarding consecutive and concurrent terms

23

in the vehicular homicide setting turns on a careful evaluation of the specific case.

C.

Nothing in the trial court's determination in this case suggests that it reached its decision through the application of a presumption, contrary to the Appellate Division's suggestion. Liepe, 453 N.J. Super. at 135-36. In the court's detailed consideration of the facts before it, and its citation to the language of Carey, there was no mention of a presumption. We detect in the trial court's analysis no misunderstanding of the governing principles. See id. at 133.

Consistent with Yarbough and Carey, the trial court acted within its discretion when it found that the injuries inflicted on multiple victims in this case warranted consecutive sentences. As Carey mandated, the trial court carefully considered whether the accident's impact on multiple victims "renders the collective group of offenses distinctively worse" than those offenses would be had defendant killed or injured only one individual. See 168 N.J. at 428. The court deemed the impact of defendant's conduct on both R.S. and M.J.G. to be the "worst consequences imaginable," and observed that the impact of defendant's conduct on M.G. to be "extremely serious":  a child, R.S., was killed; another child, M.J.G., was permanently paralyzed; and M.G.

24

was seriously and permanently injured. To the trial court, the imposition of concurrent sentences for defendant's offenses would not ensure accountability.

The trial court considered the fairness of a thirty-two-year aggregate NERA sentence, taking into account defendant's age. See State v. Cuff, ___ N.J. ___ (2019) (slip op. at 37-38) (reminding trial courts to consider the fairness of an aggregate sentence); State v. Abdullah, 184 N.J. 497, 515 (2005) (same). It properly viewed its primary obligation, however, not to ensure that defendant would live long enough to be released on parole, but to craft a sentence warranted by the offenses.

We find no "deviation from [the Code's sentencing] objectives, in view of the standards and criteria therein set forth," in the trial court's determination, and accordingly we find no error. See Roth, 95 N.J. at 365 (quoting Cox, 396 N.E.2d at 65). A court, acting within its broad discretion, could have imposed a concurrent term of incarceration for defendant's aggravated manslaughter conviction or for one or both of his convictions of aggravated assault, but it was not an abuse of discretion to impose consecutive terms in this case.

Nor do we find the sentence imposed by the trial court to shock the judicial conscience.

The Appellate Division partially premised its conclusion that the trial court's sentence shocked the judicial conscience on a comparison between defendant's sentence and sentences recounted in sixteen Appellate Division decisions. Liepe, 453 N.J. Super. at 138-39. It suggested that the sentence was an abuse of discretion because it was not "shown to be in accord" with sentences imposed in similar circumstances. Id. at 142.

This Court, however, has never imposed on a trial court the obligation to demonstrate that a sentence comports with sentences imposed by other courts in similar cases. See N.J.S.A. 2C:44-5; see also Yarbough, 100 N.J. at 643-44.[6] The Yarbough guidelines promote proportionality not by a comparative analysis of the sentencing practices of different courts, but by focusing the trial court on the "facts relating to" the defendant's crimes. Carey, 168 N.J. at 423; see also Yarbough, 100 N.J. at 643-44. Here, the trial court properly focused on the case before it, and on the devastating impact of defendant's crimes.

---

[6] Indeed, it would be impractical for a sentencing court to conduct a fair and comprehensive survey of sentences imposed in matters similar to the case before it. Many sentences are never reported in appellate decisions, and there is no indication that those that are reported provide a representative sample of sentencing practices throughout the State. Even sentences that happen to be reported in appellate opinions may not provide a sentencing court with a detailed understanding of the defendant's crimes or the trial court's application of the Yarbough factors in that case.

26

We recognize, as the trial court recognized, that defendant may spend the rest of his life in jail.  We agree with the trial court, however, that its task was not to ensure defendant's eventual release, but to devise a sentence commensurate with defendant's crimes.

Defendant's consecutive terms do not violate statutory or judicial guidelines for sentencing, and they do not shock the judicial conscience. There was no abuse of the trial court's sentencing discretion in this case.

IV.

The judgment of the Appellate Division is reversed, and the sentence imposed by the trial court is reinstated.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion.