FISHER, P.J.A.D.
*129 In this appeal, we chiefly focus on the sentencing judge's imposition of consecutive prison terms of twenty, seven, and five years as a result of defendant's conviction for first-degree aggravated manslaughter and his two convictions for second-degree aggravated assault, all arising from a tragic 2011 auto accident in Hamilton Township. We reject defendant's arguments regarding his convictions, but we remand for resentencing because the judge appears to have applied a presumption in favor of consecutive terms in such circumstances, and because the aggregate thirty-two year sentence, all subject to an eighty-five percent period of parole ineligibility, shocks the judicial conscience, particularly when imposed on an offender who was fifty-eight at the time of the incident and sixty-two at the time of sentencing.
I
On an early Sunday afternoon in April 2011, defendant William T. Liepe was driving southbound on Cologne Avenue in Hamilton Township. Although intoxicated, defendant was driving within the fifty mile per hour speed limit and within the proper lane of travel. Defendant, however, averted *355 his eyes from the roadway to observe a ballgame on the opposite side of the road. That inattention caused defendant's vehicle to slam into the back of a Honda Accord, which had stopped in the same travel lane to make a left turn. And that collision forced the Honda into oncoming traffic, *130 causing a collision with a northbound Cadillac Escalade. A nine-year old passenger in the Honda was killed, and the driver as well as another Honda passenger sustained serious permanent injuries; occupants of the Escalade were treated for minor injuries.
Defendant's vehicle struck a tree, and he was taken to a nearby hospital for treatment. Police secured defendant's consent to draw blood and determined he had a .192 blood alcohol content (BAC) at that time.
II
Defendant was indicted and charged with: first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a) ; second-degree vehicular homicide, N.J.S.A. 2C:11-5 ; two counts of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) ; two counts of third-degree assault by auto, N.J.S.A. 2C:12-1(c)(2) ; and one count of fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(2). Defendant moved to dismiss for various reasons; the judge dismissed only the aggravated manslaughter charge. We denied but the Supreme Court granted the State's motion for leave to appeal and remanded to us to review the interlocutory order. By way of an unpublished opinion, we reversed and ordered reinstatement of the aggravated manslaughter count. State v. Liepe, No. A-5363-12 (App. Div. Apr. 10, 2014).
Defendant moved to suppress BAC evidence, arguing the State required but lacked a search warrant for drawing defendant's blood at the hospital. At the conclusion of an evidentiary hearing, the judge denied the motion for reasons contained in a written decision.
Trial commenced in September 2014 but defendant failed to appear for the second day of jury selection; it was learned he attempted suicide.[1] A six-day jury trial occurred in March 2015, at *131 the conclusion of which defendant was convicted on all counts. He was sentenced to a twenty-year prison term on the aggravated manslaughter conviction, consecutive five-year and seven-year prison terms on the aggravated assault convictions, and a concurrent one-year term on the assault-by-auto conviction-an aggregate prison sentence of thirty-two years. And the terms imposed on the manslaughter and aggravated assault convictions were subject to an eighty-five percent period of parole ineligibility, N.J.S.A. 2C:43-7.2. An amended judgment of conviction directed that the periods of mandatory parole supervision for the three consecutive terms should also run consecutively, for an aggregate period of mandatory parole supervision of eleven years.
III
Defendant appeals, arguing:
I. IN LIGHT OF THE FACTS OF THE CASE AND THE UNBLEMISHED RECORD OF DEFENDANT, THE COURT'S SENTENCE WAS CLEARLY ERRONEOUS AND "SHOCKS THE CONSCIENCE OF THE COURT."
*356 II. THE LOWER COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND MOTION FOR A NEW TRIAL.
III. THE EXTRACTION OF [DEFENDANT'S] BLOOD FOR THE PURPOSES OF DETERMINING HIS [BAC] VIOLATED ESTABLISHED CONSTITUTIONAL PRINCIPLES AND SHOULD HAVE BEEN SUPPRESSED.
IV. THE COURT ERRED IN ALLOWING THE STATE'S EXPERT TO TESTIFY WITHOUT SCIENCE AND OPINE THAT [DEFENDANT] WAS SIXTY TIMES MORE LIKELY TO BE INVOLVED IN A FATAL ACCIDENT (NOT RAISED BELOW).
V. THE COURT IMPROPERLY ALLOWED BIAS AND EMOTION INTO THE TRIAL AND ALLOWED THE STATE TO INTRODUCE HIGHLY PREJUDICIAL PHOTOGRAPHS ALL WHICH DEPRIVED [DEFENDANT] OF HIS CONSTITUTIONAL RIGHTS (PARTIALLY RAISED BELOW).
VI. THE COURT ERRED IN FAILING TO DISMISS A JUROR FOR CAUSE WHEN SHE RECOGNIZED HER BEST FRIEND TREATED ONE OF THE VICTIMS (NOT RAISED BELOW).
VII. PLAIN ERROR AND CUMULATIVE ERROR REQUIRE REVERSAL.
*132 With the exception of Point I, we find insufficient merit in defendant's arguments to warrant further discussion except for the following brief comments. R. 2:11-3(e)(2).
Our rejection of defendant's Point II-in which he argues the evidence could not support a conviction of first-degree aggravated manslaughter-is based on our earlier interlocutory decision in reversing the pretrial dismissal of that count. See Lombardi v. Masso, 207 N.J. 517, 538, 25 A.3d 1080 (2011). Our rejection of defendant's Point III is based on the fact the judge found, at the conclusion of an evidentiary hearing, that defendant knowingly and voluntarily consented to the drawing of blood; those findings are deserving of our deference. See State v.Reece, 222 N.J. 154, 166, 117 A.3d 1235 (2015). As for Point IV-in which defendant argues prejudice from a prosecution expert's testimony about the effect of alcohol on an individual's behavior-we note that defendant did not object at trial, and we are not persuaded that any error, if any occurred, was capable of producing an unjust result. R. 2:10-2. In Point V, defendant argues the judge allowed emotion to seep into the trial through admission of what defendant refers to as "highly prejudicial photographs" and through testimony that elicited information about the victims' injuries. Defendant, however, has not provided us with the photographs he believes were prejudicial. And we do not view the few examples offered by defendant about information concerning his victims' injuries to support his argument that the prosecutor's summation exceeded the bounds of proper advocacy or had the effect of unnecessarily evoking the jury's emotions. In his Point VI, defendant contends the judge erred by failing to dismiss a juror who, upon admission of photographs of one of the victims engaged in physical therapy, realized the victim's therapist was a friend. The juror brought this to the judge's attention, and the judge questioned the juror and cautioned her not to discuss the case with the therapist. During the brief but thorough proceeding about the juror, defense counsel said he "didn't have a problem with it" and that the situation "seem[ed] minor" to him. These circumstances did not warrant the juror's removal.
*357 Defendant lastly argues in his Point VII that *133 cumulative error requires reversal; our rejection of that argument warrants no further discussion.
IV
As for defendant's arguments in Point I, we agree the sentence imposed is shocking to the judicial conscience and was based on the judge's misunderstanding of applicable legal principles about when consecutive terms are warranted. Consequently, we remand for resentencing.
A
To summarize his sentencing findings, which were thoroughly set forth not only in open court at the time of sentencing but also in the judgment of conviction, the judge applied aggravating factors three and nine-the risk defendant would reoffend, N.J.S.A. 2C:44-1(a)(3), and the need to deter defendant and others, N.J.S.A. 2C:44-1(a)(9) -to the aggravated manslaughter conviction. He correctly recognized aggravating factor two-the seriousness of the harm caused, N.J.S.A. 2C:44-1(a)(2) -was subsumed in the manslaughter conviction itself and its application would therefore constitute "double counting." The judge gave aggravating factor three "slight weight." While defendant had no prior criminal convictions, the judge considered defendant's driving record[2] and alcoholism, citing, in the latter regard, State v. Casele, 198 N.J. Super. 462, 473-74, 487 A.2d 765 (App. Div. 1985), as grounds for concern that defendant could reoffend.
*134 In applying aggravating factor nine-the need to deter-the judge noted that the "horrific consequences" of defendants' conduct "garnered county wide notoriety about this case and, therefore, the sentence imposed will receive substantial attention by the populace." The judge rejected mitigating factor two-applicable when a defendant did not contemplate his conduct would "cause or threaten serious harm," N.J.S.A. 2C:44-1(b)(2) -because "given this day and age and the public dialogue concerning the ills of drinking and driving that the defendant could consume the amount of alcohol he did and not understand that he could inflict serious harm on others" was not to be taken seriously. The judge also rejected mitigating factor ten-when a defendant would be "particularly likely to respond affirmatively to probationary treatment," N.J.S.A. 2C:44-1(b)(10) -because probationary supervision "cannot be reasonably undertaken, given the sentences that must be imposed" and because, "with alcoholism as the underlying pathology for the defendant[']s conduct, it would be difficult to say that he is particularly likely to respond to probationary supervision."
From these findings and observations, the judge concluded the aggravating factors outweighed the mitigating factors. In responding to defendant's argument that, in light of his age, he should not impose a sentence "which would amount to one of death while in prison," the judge acknowledged *358 his obligation to consider the "real-time" effect of NERA and the overall sentence in light of this particular defendant, but he concluded his "goal [was] to impose the appropriate sentence for the crimes committed and not one designed to assure [defendant's] release prior to the end of his life."
The judge recognized that the vehicular homicide conviction merged with the aggravated manslaughter conviction, and that two of the assault-by-auto convictions merged into the aggravated assault convictions. Consequently, defendant received prison terms for: the aggravated manslaughter conviction arising from the death of the nine-year old Honda passenger; the aggravated *135 assault conviction regarding the Honda driver, whose injuries were permanent and quite serious; the aggravated assault conviction regarding the Escalade passenger, who also sustained permanent and serious injuries; and an assault-by-auto conviction regarding the less-seriously-injured Escalade passenger. In considering the aggravating and mitigating factors outlined earlier-and also in applying aggravating factor two-"the gravity and seriousness of the harm inflicted," N.J.S.A. 2C:44-1(a)(2) -to the aggravated assault convictions, the judge imposed, respectively, terms of twenty years (for aggravated manslaughter), seven and five years (for the aggravated assault convictions), and one year (for the assault-by-auto conviction). The three lengthier terms were subjected to eighty-five percent periods of parole ineligibility and were also ordered to run consecutively; the fourth one-year term was ordered to run concurrently.
B
As a result of the imposition of consecutive terms, defendant received an aggregate prison term of thirty-two years. With the impact of NERA, this sentence would prelude defendant's eligibility for parole until he was eighty-nine years old.
The consecutive terms imposed were the product of the trial judge's determination that State v. Carey, 168 N.J. 413, 775 A.2d 495 (2001) compelled at least two consecutive terms. Carey, according to the trial judge, held that when an offender's use of a motor vehicle produces multiple victims a sentencing court should "ordinarily ... impos[e] ... at least two consecutive terms." Id. at 429, 775 A.2d 495. But Carey, in our view, did not obligate the imposition of consecutive terms here, let alone three consecutive terms and particularly when one of those terms was a sentence imposed for a first-degree offense.
To be sure, the Carey majority observed that "in vehicular homicide cases, the multiple-victims factor is entitled to great weight and should ordinarily result in the imposition of at least two consecutive terms when multiple deaths or serious bodily *136 injuries have been inflicted upon multiple victims by the defendant." Id. at 429-30, 775 A.2d 495 (emphasis added). Sentencing courts, however, should not assume from this statement that there exists a presumption in favor of consecutive terms. Indeed, the Carey majority emphasized-apparently in response to concerns expressed by two dissenting justices-that it had not established a presumption or a per se rule and that the imposition of consecutive terms always lies in the sentencing judge's discretion. Id. at 419, 775 A.2d 495 (holding that, "[a]lthough we do not adopt a per se rule, we conclude that it was not an abuse of the trial court's discretion to impose consecutive sentences"). Because we discern from the judge's decision to impose consecutive terms that he believed Carey required consecutive terms-a conclusion the Court expressly rejected, ibid.-we remand for resentencing and for *359 the judge's exercise of his discretion, without an assumption of a per se obligation to impose consecutive terms.
To further explain, we note, as the Carey majority recognized, that the Criminal Code provides little guidance about when a judge may impose consecutive terms. Id. at 422, 775 A.2d 495. The Code declares only that "multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a). To fill the void created by the Code's silence, the Supreme Court directed sentencing courts to consider the following six factors:
(1) there can be no free crimes in a system for which the punishment shall fit the crime;
(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
(a) the crimes and their objectives were predominantly independent of each other;
(b) the crimes involved separate acts of violence or threats of violence;
(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
(d) any of the crimes involved multiple victims;
(e) the convictions for which the sentences are to be imposed are numerous;
*137 (4) there should be no double counting of aggravating factors;
(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and
(6) there should be an overall limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.
[ State v. Yarbough, 100 N.J. 627, 643-44, 498 A.2d 1239 (1985).]
Yarbough's sixth factor was abrogated in 1993 when the Legislature amended N.J.S.A. 2C:44-5(a) and removed Yarbough's the "outer limit" on the cumulation of consecutive sentences.
In Carey, the Supreme Court expressed its view as to how these factors should be employed in vehicular homicide cases. There, the sentencing judge imposed consecutive seven-year prison terms for two vehicular homicide convictions; we reversed, viewing the imposition of consecutive terms to be an abuse of discretion. The Carey majority, in reversing our judgment, started by emphasizing "the Yarbough guidelines are just that-guidelines." 168 N.J. at 427, 775 A.2d 495. They are, according to the Court, "intended to promote uniformity ... while retaining a fair degree of discretion in the sentencing courts." Ibid. Consequently, the Court held that the five "facts relating to the crimes" within Yarbough's third guideline "should be applied qualitatively, not quantitatively," ibid., and determined that consecutive terms may be imposed even when most of the guidelines favor concurrent terms, id. at 427-28, 775 A.2d 495. In this context, the Court held that "ordinarily" consecutive terms should be imposed and found the imposition of consecutive terms in light of the circumstances of the case before it to be permissible. Id. at 429, 775 A.2d 495. Rather than viewing the Court's expression *360 of what should "ordinarily" be imposed as always applying in multiple-victim vehicular homicide cases, a sentencing judge should view each case in light of its specifics and in comparison with the specifics of Carey.
True, like Carey, defendant was driving while intoxicated. But there are significant differences. Carey caused two deaths and serious injuries to two others, id. at 419-20, 775 A.2d 495 ; defendant caused one death and serious injuries to two others as well as *138 less serious injuries to another. Carey was driving at an excessive speed, between sixty-five and eighty-one miles per hour in a twenty-five miles per hour zone, id. at 420, 775 A.2d 495. Defendant was not speeding; instead, the accident was caused by defendant's failure to make proper observations. Stopping there, one would likely conclude that Carey earned greater prison time than defendant. The damage caused by Carey was greater, and his excessive speeding for an extended period of time,[3] revealed a conscious disregard for societal norms and an enhancement of the danger generated by his intoxication. Defendant here was not speeding and his vehicle remained within the proper lane of travel; other than driving while intoxicated, like Carey, defendant's only apparent departure from the rules of the road was the averting of his eyes from the roadway for a long enough period of time to be unaware the Honda had stopped in his path to make a turn.
In reversing our determination that the sentencing judge abused his discretion in imposing consecutive terms, the Carey majority left in place two seven-year consecutive terms-a fourteen-year aggregate term. Id. at 422, 775 A.2d 495. Here, the State urges our affirmance of three consecutive terms-consisting of twenty, seven, and five year terms-an aggregate thirty-two year prison term. How can it be said-if, as the Carey majority held, the Yarbough factors were intended to promote uniformity in sentencing, id. at 422, 775 A.2d 495 -that uniformity in sentencing has been achieved here? Both Carey and defendant victimized four individuals, but Carey received only two consecutive terms, and defendant received three. And defendant received an aggregate term more than twice as long as Carey's and significantly more than most, in fact nearly all, the sentences imposed in similar or far more tragic circumstances than here, as revealed in our *139 reported and unreported[4] appellate decisions since Carey.[5] Indeed, *361 although defendant's conviction of first-degree aggravated manslaughter was cause for a lengthier prison term on the most serious offense than received by Carey-whose most serious offenses were the two counts of second-degree vehicular homicide for which he was convicted-we do not view that as a persuasive basis for imposing three consecutive terms, when Carey only received two, despite the fact that both caused death or injuries to a total of four innocent victims.
Carey did not fix how Yarbough must apply in all vehicular homicide cases. Every case requires its own Yarbough analysis. Here, there is no question but that three of the five of Yarbough's facts-relating-to-the-crime third factor favor the imposition of concurrent terms: the crimes were not predominantly independent of each other; the crimes involved a single act; and the crimes involved a single act of aberrant behavior. Carey, 168 N.J. at 424, 775 A.2d 495. There can be no dispute that at least one factor-multiple victims-favored consecutive terms. The fifth-the convictions for which the sentences are to be imposed are numerous-was found in similar circumstances by the Carey majority to also favor consecutive terms, id. at 423, 775 A.2d 495, even though it may fairly be argued that the multiple convictions arise from the fact that there were multiple victims; in many instances-and this *140 is one-this fifth factor is simply another way of recognizing there were multiple victims. In short, those two factors are often double-counted, as they were here.
We also observe that this case differs from Carey in another significant way. Here, the State pursued and was able to convince a jury to convict defendant of first-degree aggravated manslaughter in causing the death of the nine-year-old Honda passenger. Consequently, in imposing sentence, the term imposed for that conviction was necessarily significantly higher than what Carey faced when he was sentenced on two second-degree vehicular homicide convictions. The Carey Court recognized that the Yarbough determination, and the Court's direction that "ordinarily" consecutive terms should be imposed when there are multiple victims, may be impacted by such a circumstance, emphasizing in the same context of its "ordinarily" imposed language that, "in multiple-victim cases," nothing "prevent[s] the sentencing court from setting the base term of each sentence below the maximum provided by the Code," which was "precisely what occurred" in the trial court there. Id. at 430, 775 A.2d 495. Clearly, the Court intended that sentencing judges would take fully into consideration the real-time consequences of an accumulation of consecutive terms. See State v. Abdullah, 184 N.J. 497, 515, 878 A.2d 746 (2005) ("remind[ing]" trial courts that "when imposing either consecutive or concurrent sentences, '[t]he focus should be on the fairness of the overall sentence," quoting State v. Miller, 108 N.J. 112, 122, 527 A.2d 1362 (1987) ). Considering that defendant was an otherwise law-abiding citizen, and fifty-eight years old at the time of the offenses (sixty-two at the time of sentencing), the judge's imposition of three consecutive terms, one of which was a twenty-year term-and all subject to NERA-demonstrates the real-time consequence of the aggregate sentence was not given fair consideration.
And there is yet another reason for the judge to have avoided an unexplored, lock-step adoption of Carey. Carey caused two deaths and it was in that context that the Court gave *141 expression to what it believed should ordinarily be imposed. Indeed, we view that particular fact-not present here, since defendant caused a single death-as the predominant ground *362 upon which consecutive terms were justified by the Supreme Court in Carey. See also Molina, 168 N.J. 436, 441, 775 A.2d 509 (2001).[6] If, as is now argued, a consecutive term should be imposed for each victim of an accident caused by an intoxicated defendant, including those sustaining nonfatal injuries, then the argument that a consecutive term should be imposed for each victim would have led to Carey receiving four consecutive terms, instead of two. But if, as it seems to us, the Court intended that the convictions on the offenses related to the deaths caused are to "ordinarily" result in consecutive terms, then, in this case, Carey's holding about consecutive terms did not require consecutive terms because defendant's actions caused one death, not two. In short, a reasonable reading of Carey's"ordinarily-imposed" language might very well have been intended as ensuring that the defendant not get a free "vehicular homicide" without militating or even suggesting that "ordinarily" consecutive terms should be imposed for each victim, regardless of whether each victim was killed.
V
For these reasons, we remand for resentencing and for the judge's reconsideration of the imposition of consecutive terms without an assumption that Carey requires at least two consecutive terms, as the judge previously presupposed. We also remand for resentencing because, in this context, the judge appears not to *142 have fairly considered the real-time consequences of the aggregate term imposed, nor did he appear to consider the fact that the sentence imposed here far exceeded what was imposed in Carey and has not been shown to be in accord with any other sentence imposed in similar circumstances, thus impairing the overarching Yarbough goal that there be uniformity in sentencing.
The judgment of convictions are affirmed but, for the reasons expressed, we remand for resentencing and do not retain jurisdiction.
APPENDIX
-29 years: State v. Vargas, No. A-3414-13 (App. Div. June 27, 2016) (the intoxicated defendant lost control of his vehicle, side-swiped a truck, struck a fire hydrant and telephone pole and finally crashed into a tavern, killing the passenger of his car and injuring three tavern patrons; the aggregate term consisted of eighteen years for first-degree aggravated manslaughter, eight years for second-degree aggravated assault, and eighteen-month terms on each of two assault by auto convictions, all ordered to run consecutively).
-25 and 1/2 years: State v. Villanueva, No. A-3460-10 (App. Div. Nov. 5, 2012) (defendant engaged in unlawful drag racing that left three dead and one with serious injuries; the aggregate term consisted of three second-degree vehicular homicide convictions (eight years each) as well as a fourth-degree assault-by-auto conviction (eighteen months), which concerned the one individual who was injured).
*363 -25 years: State v. Atwater, 400 N.J. Super. 319, 947 A.2d 175 (App. Div. 2008) (the intoxicated defendant was driving at an excessive speed when he struck and killed two pedestrians, after which he left the scene of the accident; the aggregate term consisted of consecutive twelve-, ten-, and three-year prison terms for the two counts of first-degree vehicular homicide and a count for leaving the scene of an accident).
*143 -18 years: State v. Bieniek, 200 N.J. 601, 985 A.2d 1251 (2010) (defendant pleaded guilty as a result of an alcohol-related accident; the defendant was driving 100 mph when his vehicle struck another vehicle, killing its driver and injuring a passenger in defendant's vehicle; pursuant to the plea agreement, the judge imposed an eighteen-year term on the first-degree aggravated manslaughter conviction and a concurrent term on the second-degree aggravated assault conviction).
-18 years: State v. Brooks, No. A-6158-08 (App. Div. Oct. 27, 2010) (the intoxicated defendant lost control of his vehicle and crashed head-on into a taxi, killing the taxi driver, seriously injuring two of the taxi's passengers, and seriously injuring defendant's passenger; the aggregate term consisted of a ten-year term for vehicular homicide, and three eight-year terms on the three aggravated assault convictions that were ordered to run concurrently to each other but consecutively to the ten-year term).
-17 years: State v. Michaels, No. A-5190-10 (App. Div. Oct. 15, 2012) (while under the influence of Xanax, the defendant drove on the wrong side of a highway, resulting in the death of another vehicle's passenger as well as injuries to the other driver; the aggregate sentence consisted of a twelve-year term for second-degree vehicular homicide and a consecutive five-year term for assault by auto).
-15 years: State v. Evans, No. A-5479-09 (App. Div. Aug. 1, 2011) (the intoxicated defendant ran a red light in a school zone and crashed into a patrol car, killing one police officer and injuring another; the sentence consisted of a fifteen-year prison term for first-degree vehicular homicide and a concurrent seven-year term for second-degree aggravated assault).
-12 years: State v. Green, No. A-1882-10 (App. Div. 2013) (defendant was speeding while intoxicated, eventually running a red light and causing an accident that killed one and injured two others; the sentence consisted of an eight-year term for vehicular homicide and two four-year terms on the assault convictions that *144 were ordered to run concurrently to each other but consecutive to the eight-year term).
-12 years: State v. Campanella, No. A-4606-11 (App. Div. July 3, 2013) (defendant caused two separate accidents while speeding and under the influence of alcohol, barbiturates and other intoxicants, killing one and seriously injuring another; he received a twelve-year term for first-degree aggravated manslaughter with all other terms ordered to run concurrently).
-10 years: State v. Molina, 168 N.J. 436, 775 A.2d 509 (2001) ( Carey' s companion case; defendant was convicted on two vehicular homicide counts (when that was a third-degree offense) and received consecutive five-year prison terms).
-10 years: State v. Perez, No. A-4339-07 (App. Div. May 14, 2009) (while intoxicated, the defendant drove at an excessive rate of speed, hitting a road barrier and then crashing into parked cars; the impacts killed one passenger and seriously injured another; the sentence imposed, pursuant to a plea agreement, consisted of a ten-year prison term for aggravated *364 manslaughter and a concurrent five-year term for aggravated assault).
-10 years: State v. Johns, No. A-3133-12 (App. Div. June 15, 2015) (while under the influence of alcohol, defendant caused a head-on collision that killed one and seriously injured two others; a ten-year term was imposed for second-degree vehicular homicide with all other terms ordered to run concurrently).
-9 years: State v. Williams, No. A-1610-14 (App. Div. Mar. 10, 2017) (the intoxicated defendant caused an accident that victimized four; the defendant's passenger was seriously injured; the driver and one passenger of the other vehicle were moderately injured; and another passenger in the other vehicle was killed; the sentence consisted of a six-year term for second-degree vehicular homicide and a consecutive three-year term on a third-degree assault-by-auto conviction, together with other lesser concurrent terms).
*145 -7 years: State v. Gentilello, No. A-0419-10 (App. Div. Mar. 19, 2013) (an alcohol-related accident caused by the defendant left one man dead, and his wife and two children seriously injured; a seven-year term was imposed on the second-degree vehicular homicide conviction and concurrent terms on three fourth-degree assault-by-auto convictions).
-7 years: State v. Nasta, No. A-3951-14 (App. Div. Feb. 23, 2017) (while under the influence of heroin, the defendant crashed the family vehicle into a light pole, resulting in her husband's death and serious injuries to her five-year-old and two-month-old daughters; she received a seven-year term for vehicular homicide and concurrent terms on the other convictions).
-7 years: State v. Riddick, No. A-2742-11 (App. Div. Nov. 6, 2014) (the defendant's operation of his vehicle caused one death and serious injuries to three others; a seven-year term for vehicular homicide was imposed with the terms on all other convictions ordered to run concurrently).

Little information about this incident is contained in the record on appeal. The presentence report observed that in September 2014 defendant was hospitalized for a week as a result of a "self-inflicted gunshot." The judge also referred to this circumstance at the time of sentencing.

The judge recognized that defendant had a number of past motor vehicle violations, including "stop sign violations, speeding, unsafe operation, obstructing the passage of another vehicle and a previous driving while intoxicated in 1977" and that defendant was "involved in [five] reported accidents including leaving the scene of one." Defendant's driver's license was suspended on two prior occasions. Notwithstanding, the judge applied mitigating factor seven-defendant lacked a history of criminal activity or led a law-abiding life for a substantial period of time, N.J.S.A. 2C:44-1(b)(7) -because when sentenced, defendant was sixty-two years old and had not previously committed a criminal conviction; the judge gave this mitigating factor "moderate weight."

The Court's Carey decision does not reveal the length of time the defendant was speeding, but certainly long enough to cause a passenger-one of his injured victims-to unsuccessfully urge him to "slow down." Id. at 419, 775 A.2d 495. The Court also observed that, during this course of events, Carey "nearly struck a volunteer firefighter who was on his way home from a firehouse." Id. at 420, 775 A.2d 495.

We cite unreported decisions in the appendix not for their precedential value-they have no such value, R. 1:36-3-but as a source of information regarding sentencing in similar matters as evidence of how defendant's aggregate sentence-because of the imposition of consecutive terms-is out of alignment with nearly all other similar cases. Only State v. Baum, 224 N.J. 147, 129 A.3d 1044 (2016) provides evidence of a greater aggregate term, and there the defendant-with a BAC nearly four times the legal limit-was convicted of two counts of first-degree aggravated manslaughter, for which he received two consecutive twenty-year prison terms, for striking and killing two pedestrians, both teenaged girls.

See the attached appendix, where we have synopsized all available post-Carey decisions-some reported, most unreported-identifying sentences imposed in multiple-victim vehicular homicide cases. They are ordered from lengthiest to shortest aggregate sentence.

The Court decided Carey and Molina on the same day. Molina further suggests that the Court's holding that consecutive terms should "ordinarily" be imposed in multiple-victim, vehicular homicide cases was intended for cases in which there were multiple fatalities. Like Carey, Molina's operation of a vehicle resulted in two deaths, for which he received consecutive five-year prison terms subject to two-and-one-half-year parole ineligibility periods. Id. at 441, 775 A.2d 509 (Molina's actions took place prior to the Legislature amending N.J.S.A. 2C:11-5 so as to render vehicular homicide a second-degree instead of a third-degree offense).