**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0544-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILLIAM T. LIEPE,

     Defendant-Appellant.

_____

Argued March 11, 2025 – Decided July 22, 2025

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 12-12-2766.

Gilbert G. Miller argued the cause for appellant (Wronko & Loewen, attorneys; Gilbert G. Miller, of counsel and on the brief).

Marisa D. Pescatore, Assistant Prosecutor, argued the cause for respondent (William E. Reynolds, Atlantic County Prosecutor, attorney; Marisa D. Pescatore, of counsel and on the brief).

PER CURIAM

This tragic case returns to us following defendant William T. Liepe's appeal of the denial of his post-conviction petition (PCR) after an evidentiary hearing.

Defendant was convicted of first-degree aggravated manslaughter, second-degree vehicular homicide, two counts of second-degree aggravated assault, two counts of third-degree assault by auto, and one count of fourth-degree assault by auto. His conviction arises from a car accident on the morning of April 10, 2011 when defendant rear-ended a car, causing the death of a child, permanent paralysis of another child, and serious injuries to the driver of the car. The collision also injured a passenger in a car that was traveling in the opposite lane. Before the accident, defendant drank two "mugs" of beer at a bar before going to another establishment to drink an additional four to eight beers.

On direct appeal, we affirmed defendant's convictions but remanded for resentencing, holding his aggregate thirty-two-year prison sentence was shocking to our judicial conscience. State v. Liepe, 453 N.J. Super. 126, 129 (App. Div. 2018) (Liepe I). The Supreme Court reversed and reinstated defendant's sentence. State v. Liepe, 239 N.J. 359, 363 (2019).

Defendant subsequently filed a PCR petition, raising numerous allegations of ineffective assistance of counsel. The PCR court denied relief

2

without an evidentiary hearing. We reversed, ruling the court "erred in denying relief without allowing the development of the issues at an evidentiary hearing." State v. Liepe, No. A-2228-20 (App. Div. Mar. 8, 2023) (slip op. at 5) (Liepe II).

On remand, the PCR court conducted an evidentiary hearing and denied defendant relief. The court determined the evidence "shows that trial counsel made appropriate strategic decisions, properly investigated the case and properly carried out his duties and obligations at all stages of the case." The court "found counsel to be experienced, competent, truthful and credible." In contrast, the court held defendant was "confused and uncertain;" his testimony "did not appear to be forthright;" and "[h]is statements were not supported by the record."

Before us, defendant argues:

POINT I

THE STATE FAILED TO REBUT MULTIPLE INSTANCES OF INEFFECTIVE ASSISTANCE OF COUNSEL IN THE EVIDENTIARY HEARING.

A. [Defendant's] trial counsel was constitutionally deficient in opposing Dr. Pandina's conclusion that drivers with a [.192] BAC are 60 times more likely to be involved in a fatal automobile accident than a person with a 0.00 BAC.

3

B. [Defendant's] trial counsel was constitutionally deficient in litigating [defendant's] motion to suppress BAC evidence resulting from the warrantless seizure of his blood samples.

C. Trial counsel was unconstitutionally ineffective for failing to move to dismiss a juror when the juror recognized that one of her best friends was treating the paralyzed victim and failing to request the court to question the juror upon her return from a party where her friend was scheduled to be present regarding any improper exposure to information or influence.

D. Counsel was unconstitutionally ineffective for not calling character witnesses on [defendant's] behalf.

E. Counsel was unconstitutionally ineffective for directing [defendant] not to testify at trial and not properly advising him on that subject.

Based upon our review of the record, the parties' arguments, and applicable law, we conclude defendant's arguments lack merit and the PCR court correctly denied defendant relief following an evidentiary hearing.

I

When a defendant seeks post-conviction relief based on ineffective assistance of counsel, an evidentiary hearing is conducted where "a defendant has presented a prima facie claim in support of post-conviction relief" based on "view[ing] the facts in the light most favorable to a defendant." State v. Preciose, 129 N.J. 451, 462-63 (1992). A prima facie case of ineffectiveness is

established by showing that: (1) counsel's performance was deficient, and (2) that deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). In other words, a defendant must show that "but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. Under Strickland, a defendant is entitled only to "reasonably effective assistance" of counsel, as defined by "prevailing professional norms." Id. at 687-88. Tactical decisions, such as those related to trial strategy, will not be second-guessed, id. at 689, but an attorney's "inadequate investigation of the law or fact . . . dispels the presumption of competence that might otherwise arise from a strategic choice," State v. Bey, 161 N.J. 233, 251-52 (1999) (citation omitted). "[A]t a PCR [evidentiary] hearing, the burden is on the [defendant] to establish his right to 'relief by a preponderance of the credible evidence.'" State v. Nash, 212 N.J. 518, 541 (2013) (quoting Preciose, 129 N.J. at 459).

Where the PCR court conducts an evidentiary hearing, we must uphold the court's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). We are "substantially influenced by [the court's] opportunity to hear and see the witnesses and to have

5

the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (quoting Robinson, 200 N.J. at 15).

In considering defendant's contentions based on these principles, we do not repeat the full procedural history and trial testimony detailed at length in our opinions on defendant's direct appeal and PCR remand. See Liepe I and Liepe II. Instead, we discuss only what is relevant to the issues on appeal. We address defendant's arguments in the order presented.

II

Challenge to The State's Expert's Testimony

Defendant argues the PCR court erred in not finding that trial counsel was ineffective in opposing the testimony of the State's expert, Dr. Robert Pandina, Director of the Center of Alcohol Studies at Rutgers University. Dr. Pandina testified defendant's blood alcohol content (BAC) at the time of the accident would have been approximately .192—significantly higher than the .08 threshold under N.J.S.A. 39:4-50(a) for driving while intoxicated—and a person with that BAC is "60 times or more likely" to be involved in a fatal car crash than a person with a BAC of 0.0. Dr. Pandina was cross-examined as follows:

> [Trial Counsel:] I reviewed a report from the National Highway Transportation Safety Board that indicated that in 2010, specifically for New Jersey, out of a total of 556 fatalities for a .15 [BAC] or higher, it was only

18 percent of the cases, and yet you're saying that [there is a] 60 percent chance more that somebody is going to be involved in an accident?

[Dr. Pandina:] Not 60 percent more, 60-fold greater risk, not a percentage, sir.

The defense offered no expert witnesses to refute Dr. Pandina's testimony opinion. However, in support of his PCR, defendant certified he recommended to trial counsel that he contact an Atlantic County jail doctor who was willing to refute Dr. Pandina's conclusion that a person with a .192 BAC was "60 times more likely" to be involved in a fatal crash. Defendant asserted counsel "never called [the doctor] to discuss the case[,] [] did not use him at trial," nor did counsel ever confer with him about hiring an expert to challenge Dr. Pandina's opinions.

To support his claim that an expert would have aided his trial defense, defendant's PCR petition included a report from Dr. Bankole Johnson, a neuropsychopharmacologist, criticizing Dr. Pandina's methodology. Dr. Johnson opined Dr. Pandina did not clarify that the relative risk of being involved in a fatal car accident "comes from multiple databases with varying levels of reliability" and there are "additional factors including the increased potential for error as there are fewer reliable cases on which to base the BAC level and reported accident data." Dr. Johnson maintained that "great caution

7

should be placed on simply reading off relative risk values off a chart." He also opined Dr. Pandina's 60-times-more-likely opinion is "an extrapolation" based on "truncate[d] . . . data," and that there is a "paucity of data at . . . higher BAC levels for older individuals (i.e. greater or equal to 35 years)."[1] Dr. Johnson concluded Dr. Pandina's "rigid or fixed number" is a relative factor that is "misleading" when presented "without qualification of the uncertainty." Moreover, because the data on which Dr. Pandina relied was taken from "those who have been in an accident," there is "no good comparative data of individuals with elevated BAC levels who have not been in a fatal accident." Therefore, the evidence presented by Dr. Pandina "was on relative risk not absolute risk," and "statements of relative risk need to be qualified properly with judicious appreciation of the quality of the data being evaluated."

In response to defendant's contention regarding the lack of an expert at trial to refute Dr. Pandina's opinions, trial counsel testified at the evidentiary hearing that he hired John Brick, Ph.D. to opine on the impact of defendant's BAC. However, he decided not to call him as a witness because it "wouldn't have been beneficial testimony to [defendant]," as Dr. Brick's conclusion "was very similar to that of [Dr. Pandina's] with regard to the [.192 BAC] and the

_____

[1] Defendant was fifty-eight years old at the time of the accident.

8                                                                                          A-0544-23

effect that would have on a person operating a motor vehicle." In fact, given Dr. Brick's opinion that a person with a .192 BAC had a "99 percent" more chance than a sober person to cause a fatal accident resulting in an aggravated manslaughter conviction, trial counsel said using "Dr. Brick would have been malpractice." Yet, trial counsel testified Dr. Pandina's 60-times-more-likely opinion "was objectionable," and "I should have objected . . . and had it stricken."

Trial counsel testified he hired a second expert, "Dr. Safirstein,"[2] who did not author a report because "there was nothing beneficial" to the defense regarding defendant's BAC. Trial counsel also emphasized that defendant did not have "unlimited funds" to retain an expert; thus, counsel had to be prudent in hiring an expert. Trial counsel stated the BAC "was what it was," and that "wasn't going to be changed." Thus, by presenting the testimony of the driver right behind defendant's car that defendant was driving properly, trial counsel's strategy was to show that defendant's high BAC did not cause the accident.

The PCR court determined trial counsel made a "plausible strategic decision" not to refute Dr. Pandina's testimony regarding defendant's .192 BAC level by instead focusing on eye-witness testimony by the driver behind

---

[2] Dr. Safirstein's first name and qualifications are not mentioned in the record.

A-0544-23

defendant's car that defendant's driving was not indicative of impaired driving prior to the accident. The court pointed out that trial counsel "hired not one, but two rebuttal expert witnesses" and "sought to attack Dr. Pandina in a different way" after his experts gave "unhelpful opinion[s]." The court stressed that "trial counsel vigorously cross-examined Dr. Pandina's testimony" regarding the sixty-times-more-likely opinion and, even if it was objected to, it is "uncertain as to whether that objection would have been sustained and [the] testimony stricken," or "that there would have been a different result given the State's evidence." The court found it insignificant "that . . . defendant was able to find an expert several years later, to disagree with Dr. Pandina's methodology and findings" because it does not mean trial counsel was ineffective, and "there is no reasonable probability that the outcome of the trial was affected."

Defendant argues the PCR court erred because:

> First, counsel failed to consult with and retain an expert who could refute Dr. Pandina's conclusion. Second, counsel failed to demand a [N.J.R.E.] 104(a) hearing to determine the conclusion's admissibility and then failed to object to its admission. Third, counsel failed to impeach the conclusion by effectively cross-examining Dr. Pandina and presenting contrary expert opinion. Fourth, counsel's summation remarks failed to effectively counter the prejudice inhering in the conclusion by accepting its validity and relevance, permitting the jury to be led by the prosecutor to a directed guilty verdict on aggravated manslaughter.

10

Fifth, counsel failed to request jury instructions which would have preclude[d] such a directed verdict.

As to being prejudiced by counsel's ineffectiveness, defendant argues the aggravated manslaughter charge "required a guilty verdict if the State proved that criminally reckless operation of [defendant's] vehicle 'elevated the risk level' of death 'from a mere possibility to a probability,' i.e., a risk of death greater than [fifty percent]." State v. Curtis, 195 N.J. Super. 354, 364 (App. Div. 1984). Prejudice was compounded by the prosecutor citing Dr. Pandina's sixty-times-more-likely opinion "as the sole basis for a finding that [defendant's] driving constituted aggravated manslaughter," because "there was a substantial danger that the jury would conflate Dr. Pandina's pronouncement that the fatality risk for .192 BAC drivers was sixty times that of 0.00 [BAC] drivers to find that there was a probability (i.e., more than [fifty percent] likelihood) of death occurring in this case." Defendant argues the sixty-fold increase opinion was "excludable" under N.J.R.E. 401 and 402 as irrelevant and under N.J.R.E. 403 for being unduly prejudicial. Defendant argues there was potential for jury confusion and, critically, the opinion "had no relevance and probative value . . . without the admission of additional evidence of the actual risk of death posed by motorists with a 0.00 BAC." Moreover, Dr. Pandina's conclusion did not

account for specific conditions found here, such as the straight, rural road, and the dry, sunny day.

We conclude the PCR court's ruling should be upheld. As we recognized in our remand decision, Dr. Pandina's sixty-times-more-likely opinion was a "colorful statistic that no doubt struck at the heart of the defense." Liepe II, slip op. at 13. The question is whether trial counsel was ineffective in not moving to strike that opinion or not more effectively attacking the doctor's credibility, which thereby kept the jury from reaching a different outcome. Trial counsel conceded that the opinion was objectionable, which he should have moved to strike. And we acknowledge that when counsel challenged this opinion during cross-examination, he mistakenly referred to it as a "60 percent chance," and did not press Dr. Pandina to provide a specific quantification of the risk posed by 0.0 BAC drivers nor did he raise defendant's age. Nevertheless, we do not conclude there is a reasonable likelihood that the jury would have found defendant not guilty of aggravated manslaughter had trial counsel done what defendant claims he should have.

To convict defendant of aggravated manslaughter, the State had to prove he "recklessly cause[d] death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). Aggravation occurs when

12

defendant's conduct "manifesting extreme indifference to human life elevates the risk level from a mere possibility to a probability." Curtis, 195 N.J. Super. at 364 (internal quotation omitted). The State did not have to prove that the risk of death to the accident victims was more likely than not as defendant contends. Considering defendant's high BAC and evidence indicating he consumed many beers the morning of the accident, he has not established that there is a reasonable probability the result would have been different had trial counsel more competently attacked Dr. Pandina's sixty-times-more-likely opinion.

III

Motion To Suppress Blood Draw

While defendant was being treated in the hospital following the accident, a police officer asked him to consent to give a blood sample. Defendant was allegedly told that, if he refused consent, his blood sample would still be taken. Defendant was "awake, alert and oriented" at the time. Later, another officer again asked defendant for his approval, resulting in defendant signing a consent form. Defendant claims when he signed the consent form, he was unaware what he was signing. As noted, defendant's blood sample revealed a .192 BAC.

Trial counsel filed a motion to suppress the BAC reading on the basis that defendant was not capable of knowingly and voluntarily giving consent to the

blood draw due to his accident injuries. The motion was withdrawn but refiled before jury selection and decided without the testimony of defendant or any supporting witnesses. We determined an evidentiary hearing was needed to explain why the first motion to suppress was withdrawn and refiled "shortly before trial." We held the hearing should also address why "trial counsel [did] not to call defendant to testify at [the] hearing [that was held], or in not calling other witnesses, to enlighten the fact finder as to defendant's ability to knowingly and voluntarily waive his right to withhold his consent." Liepe II, slip op. at 15. In addition, we concluded a hearing should address whether counsel had a "tactical reason" why he did not "more fulsomely pursue suppression" considering "defendant had a substantial factual argument" that his consent was not knowing or voluntary given his "level of intoxication . . . and his concussion." Id. at 15-16.

At the evidentiary hearing, trial counsel recalled that he filed and withdrew a motion to suppress defendant's BAC at some point, and the "law was changing with regard" to that issue at the time. He also recalled the motion was refiled but later denied due to both "exigent circumstances and consent." With regard to defendant's consent, counsel testified he had defendant's medical records and was aware defendant suffered a concussion, and that consent

14

"probably should have been an issue that [he] addressed further" at the motion hearing.

Following the evidentiary hearing, the PCR court acknowledged trial counsel "could not recall the reason for withdrawing the initial [suppression] motion" but decided "defendant failed to demonstrate that had his trial attorney not withdrawn the motion that it would have succeeded on the merits." The court found there was "no dispute that the trial [court] heard the motion to suppress and ruled that . . . defendant gave knowing and voluntary consent," and "also provided an explanation based upon the exigent circumstances exception." The court found the "record is void of any testimony by . . . defendant regarding his ability to consent and [given] it is his burden on PCR, he has failed to demonstrate any sort of deficiency [regarding] his consent." The court determined no credible evidence in the record, including defendant's medical records and alcohol consumption, nor Dr. Johnson's unqualified opinion,[3] showed that "defendant was incapable of knowingly and freely consenting to having his blood drawn."

In response to our remand direction, the PCR court found trial counsel "vigorously argue[d]" the consent issue at the suppression hearing based on his

---

[3] Dr. Johnson did not testify at the evidentiary hearing.

"explanat[ion] that the crux of his strategy was that law enforcement should have obtained a warrant." The court found "[t]here is nothing to support [] defendant's argument that the timing of the filing of the motion would have affected the outcome of the motion and the trial" or that his testimony would have resulted in the motion being granted.

Defendant argues the State failed at the evidentiary hearing to rebut the prima facie case of trial counsel's ineffective assistance in suppressing his blood draw and the .192 BAC. Defendant emphasizes trial counsel "did not contend that [defendant] lacked the capacity to consent," nor did he call "[defendant] to the stand or present other witnesses or records of his injuries." He certifies that he did not knowingly and voluntarily provide consent, and that trial counsel was deficient for not more aggressively pursuing this argument. Defendant especially emphasizes he never discussed with trial counsel before the hearing whether he would testify. We conclude, as the State contends, that, even assuming trial counsel was deficient in pursuing his suppression motion, defendant cannot show he was prejudiced because the trial court properly found exigent circumstances to draw his blood.

The State has the burden of establishing a blood draw obtained through a warrantless search "falls within one of the specific exceptions created by the

United States Supreme Court." State v. Hill, 115 N.J. 169, 173 (1989) (citing State v. Patino, 83 N.J 1, 7 (1980)). At the time of the trial court's written opinion on March 6, 2015, New Jersey followed Schmerber v. California, 384 U.S. 757, 770-71 (1966), which held the exigent circumstances exception permits the compelled taking of blood when elapsed time would lead to a dissipation of BAC. However, on May 4, 2015, our high Court ruled that the United States Supreme Court's decision in Missouri v. McNeely, 569 U.S. 141, 151-53 (2013), which held that the "totality-of-the-circumstances test remains applicable whenever a court must assess for exigency in the circumstances of a warrantless search of a person suspected of driving under the influence," would be given pipeline retroactivity. State v. Adkins, 221 N.J. 300, 311-13 (2015). Under the totality of circumstances analysis, a motion court should consider "the human body's natural dissipation of alcohol," id. at 312, as well "the urgency of the situation, the time it will take to secure a warrant, the seriousness of the crime under investigation, and the threat that evidence will be destroyed or lost or that the physical well-being of people will be endangered unless immediate action is taken," id. at 310 (quoting State v. Johnson 193 N.J. 528, 553 (2008)). "[N]o one factor is dispositive and exigency must be assessed on a case-by-case basis under a totality-of-the-circumstances standard." Id. at 310.

Although the retroactivity of <u>McNeely</u> was pending before our Supreme Court at the time of the trial court's ruling, it applied <u>McNeely</u>, holding the warrantless seizure of defendant's blood was reasonable based upon the totality of circumstances. The trial court found:

> The blood draw was accomplished 2 hours and 15 minutes from the time of the crash. Given the range of burn off rates cited in <u>McNeeley</u>, the blood alcohol level had possibly dissipated .034 [percent] or .05 [percent]. Had the minimum of one hour more been taken for the obtaining of a warrant, dissipation would have occurred at .05 [percent] or .07 [percent] Conceivably, at that point the defendant's blood alcohol could be entirely eliminated from the .08 [percent] required for conviction of driving while intoxicated.

The court also recognized it was "highly unlikely" the police could have immediately obtained a warrant, given the circumstances. The police "'had their hands full' here – 1 fatality and 6 injured people including [] defendant to be removed to the hospital for treatment; 3 vehicles involved . . . etc."

We conclude the urgency and seriousness of the crime being investigated rendered the search reasonable under the circumstances, as the trial court held.

Trial counsel explained at the evidentiary hearing that he withdrew the suppression motion first because the law was unsettled at the time. Even if he should have more "fulsomely" argued the suppression motion, defendant cannot establish by a preponderance of the evidence that his motion to

18

suppress would have been successful had counsel done so.  See State v.

Worlock, 117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal

arguments does not constitute ineffective assistance of counsel.").

IV

Dismissal Of Juror

During trial, it was revealed that juror number 14 was "really good

friends" with the physical therapist who was treating the child paralyzed by the

crash, and that the therapist was her "bridesmaid."  At a sidebar conference, trial

counsel stated he did not "have a problem with it.  It seems minor to me."  The

juror told the court she did not think it would affect her ability to be fair in the

case, even though she was going to a birthday party that weekend that the

physical therapist was also attending.  The court told the juror not to discuss the

case with the therapist and said, "we'll talk about it on Monday to find out what

happened."  In our remand opinion, we directed an evidentiary hearing to

address if there was a "sound tactical reason for defendant's trial attorney not

to" have sought juror number 14's removal.  Liepe II, slip op. at 17.

Defendant testified at the evidentiary hearing that he told counsel he

wanted the juror removed.  The juror's removal was not raised the following

A-0544-23

Monday by counsel or the court, and the juror remained on the jury and determined defendant's guilty fate.

Trial counsel testified at the evidentiary hearing that he "rec[alled] [] an issue came up with a juror, who I believe said that she knew one of the treating physicians or therapists," but he could not locate his notes taken the day of jury selection. Counsel reviewed our remand opinion and testified: "Quite frankly, I don't know why I didn't kick her off. I probably should've." Counsel stated he could not remember why he did not move to strike the juror. He also testified he did not recall defendant asking that he move to strike the juror, but that defendant "could've" done so.

The PCR court reasoned "without the benefit of trial counsel's memory as to what actually transpired, this [c]ourt can only rely on the record." The court found the record shows "the trial [court] was going to revisit the information volunteered by the juror, after the weekend, [but] that was not done." However, "[c]learly, nothing happened as the juror did not raise the issue again. More importantly, the trial [court] asked her if she could be fair, and she affirmatively answered that she could." The PCR court determined that any request to remove the juror "would have been to no avail," and defendant has not shown "that if

20

the attorney asked to have the juror removed, there was a 'reasonable probability' of a different outcome."

Defendant argues he was denied an impartial jury, considering nothing prevented the "therapist from making a remark" about the victim concerning her treatment or character, "which stood to influence the juror's assessment of the credibility of the victim, one of the State's witnesses." Defendant stresses that trial counsel was "surprised" at the evidentiary hearing that he did not request the court to remove the juror. Defendant emphasizes it was "obvious [from this court's remand ruling] that had [trial counsel] objected to the juror remaining on the panel the [trial court] would have excused the juror." Liepe II, slip op. at 16. Defendant contends the PCR court's "reasoning was openly defiant of this [c]ourt's ruling on the juror issue." Defendant argues the PCR court, after counsel did not provide an adequate strategic reason, "took it upon itself to peruse the record to glean a possible reason for counsel's decision not to challenge the juror," which "is the same record examined by this [c]ourt in reaching its conclusion that a reason was not apparent on the record." Moreover, defendant asserts the PCR court's reasons "were strained and not credible."

We fully appreciate that "[a] defendant's right to be tried before an impartial jury is one of the most basic guarantees of a fair trial." State v. Loftin,

191 N.J. 172, 187 (2007).  Counsel candidly testified that because he could not locate his notes from trial, he could not recall why he did not move to remove the juror upon reviewing the record.

Being mindful that the PCR court questioned defendant's credibility, there is no factual basis to conclude defendant directed counsel to seek juror number 14's removal.  Yet, even if we assume trial counsel was ineffective for not seeking removal of juror number 14 or revisiting the issue following the weekend recess, defendant has not proven he was prejudiced by counsel's inaction.

Juror number 14 stated the therapist did not know she was serving on the jury and her relationship with the therapist would not "[a]ffect . . . [her] ability to be fair" in the case.  The trial court instructed the juror not to "talk about the case or let [the therapist] know that [she is] involved in the trial."  We presume the juror followed the instruction.  State v. Burns, 192 N.J. 312, 335 (2007).  The court had the discretion to assess juror number 14's ability to be fair and whether the juror should be excused.  See State v. Singletary, 80 N.J. 55, 62 (1979).  There is nothing in the record persuading us that the PCR court erred in finding that the trial court likely would not have dismissed the juror based on her relationship with the non-testifying physical therapist given the court was

satisfied with her answers. We further stress that there was no trial issue about the child's injuries or the physical therapy provided. Moreover, if the court had excused the juror, defendant has not shown there is a probability his guilty verdict would have been different. Thus, we do not agree with defendant that the PCR court defied our remand directive.

V

<u>Lack Of Character Witnesses</u>

Defendant did not present any character witnesses. With his PCR petition, he certified he told his trial counsel about several trial witnesses, including public figures, who would testify on his behalf, and who later wrote letters to the court for him at sentencing. However, trial counsel "did not mention the character witnesses or any other witnesses" at trial. In our remand opinion, we determined the record "contains statements from four individuals acquainted with defendant who were willing to testify about his character had they been asked," and directed that the issue be explored at the evidentiary hearing. <u>Liepe</u> <u>II</u>, slip op. at 21-22.

Trial counsel testified he did "not recall discussing [presenting character witnesses at trial] with [defendant]." Yet, he explained:

> [M]y position with regard to character witnesses was,
> if my clients testified, I believe they were appropriate.

A-0544-23

But where a client wasn't going to testify, for whatever reason, I believed that it wasn't appropriate to call character witnesses for the purposes of the defendant's credibility for truthfulness. There was no other issue in this case that I knew character witnesses would have been beneficial.

So the answer is I did not contemplate any character witnesses. I knew that [defendant] wasn't going to testify.

Counsel also stated he did not find any notes in his file regarding character witnesses.

The PCR court found that given "defendant's admission that he drinks daily and is not affected by the consumption of this amount of alcohol, it is entirely reasonable that trial counsel's strategy, after not calling his client to testify, was likewise not to call character witnesses." The court also found that "[w]hile there were character letters from witnesses for sentencing purposes, this does not demonstrate that any witnesses were willing to come to trial and attest to the fact that . . . defendant would not act in accordance with the crimes charged." Even assuming the witnesses were willing to testify, they "would have been cross-examined about . . . defendant's drinking and driving habits," and their testimony "would have not changed the outcome of . . . defendant's trial based on the State's evidence."

Defendant argues that, without a legitimate reason, trial counsel dismissed his request to contact several people to testify in his defense at trial. Defendant argues he suffered prejudice because his witnesses had the "substantial capacity to humanize [him] and cast reasonable doubt as to whether he had the capacity to drive recklessly" under circumstances demonstrating an extreme indifference to human life. Defendant assails the PCR court's finding that it was "a reasonable strategic decision" for counsel not to call character witnesses given defendant's assertion he drank every day and was not affected by his consumption. Defendant maintains a "defendant can call character witnesses to raise a reasonable doubt even if a client does not take the stand." We are unpersuaded.

We recognize that character witnesses can aid a criminal defendant's trial defense because they are presented "to offer evidence of [a defendant's] good character to show [he or she] was unlikely to have committed the crimes charged." State v. Abril, 444 N.J. Super. 553, 560 (App. Div. 2016); see also State ex rel. V.M., 363 N.J. Super. 529, 537 (App. Div. 2003) (holding defendants have a "right to present evidence of [their] character to raise a reasonable doubt about whether [they] committed the offense.").

A-0544-23

Importantly, the PCR court found defendant "did not appear to be forthright" at the hearing. Though the letters in the record are all dated post-trial—some by several years—defendant claims the writers were ready and willing to testify on his behalf at trial. However, because there are no certifications to that effect from the writers, defendant's bald assertions are without merit. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance."). After hearing defendant and trial counsel's testimony, the PCR court found defendant's assertion was not credible; this finding is supported by the record. Moreover, the State and PCR court correctly emphasize that defendant's character witnesses would have been cross-examined on defendant's drinking and driving habits, thereby supporting trial counsel's strategy not to present them. Finally, defendant makes no showing that their testimony would have altered the jury's verdict.

Defendant's Decision Not To Testify

Defendant did not testify at trial.  With his PCR petition, he certified that he wanted to testify at trial but trial counsel "said he would not allow me to." He claimed his trial counsel did not discuss the "pros and cons" of him testifying, and instead "told me to just tell the judge that I would not testify."  Defendant said he wanted to testify to tell his side of the story, and that his drinking "was not the cause of the accident," but was essentially blocked by his counsel from doing so.

In our remand opinion, we recognized defendant told the trial court that he knew he had the right to testify, but this did "not preclude his argument that he was not adequately advised of the consequences of not testifying because what transpired between defendant and his attorney up until that point is not disclosed in the record." Liepe II, slip op. at 19-20.  We recognized that this may have been a "sound," "strategic choice," but directed an evidentiary hearing to ascertain "what information defendant was given in making that choice." Id. at 20.

At the evidentiary hearing, trial counsel testified he told defendant about his right to testify as "I do with every client."  He "recommend[ed] . . . that

[defendant] not testify. But the ultimate decision [was] for [defendant]," as it had been with "every single one of my clients in the last 45 years." Counsel stated he thought defendant should not testify because defendant was too busy running his farm and did not have time to review the trial materials, and he would be cross-examined about his drinking habits. On cross-examination, counsel stated "I do not believe that I had any discussion with [defendant] about testifying in any way in this case," neither at the suppression hearing nor at trial. However, counsel stated the "client is always told that the client is the boss. And [defendant], I'm sure, was told that. . . . [Although] I didn't have a lot of contact with [him]." Counsel stated the major reason for defendant not to testify was that defendant acknowledged "that he had consumed somewhere around eight or nine beers" at two different locations before the accident, but claimed the accident was not caused by his drinking. Counsel felt there was "no way around that" and "figured there'd be no hope in the trial" if defendant testified.

The PCR court found the "reasonable inference is that in fact . . . defendant was explained the pros and cons of testifying" and "defendant's position that he was essentially unable to make an informed decision about his right is unconvincing." The court held there "is no evidence that trial counsel's failure to encourage [defendant] to testify was deficient or how the decision against

28

testifying resulted in prejudice," as defendant's "confirmation about his drinking and driving habits on that day . . . would only strengthen the State's case." The court reasoned that if defendant had testified, "it would have opened the door on cross-examination to his drinking habits," and it is "unlikely this would have persuaded the jury to acquit . . . [him], or otherwise effect the outcome of the trial."

Defendant argues trial counsel merely advised him he could not testify due to his high BAC, but did not "explain the advantages and disadvantages of his testimony" nor did counsel make it clear it was "his choice whether to take the stand." Defendant contends that had he taken the stand, "he could have established that he had driven carefully until the instance in which he took his eye off the road, and he could have exhibited remorse for his conduct." He also could have "humanized himself" with his "down-to-earth" personality. Defendant admits that testifying could have engendered prejudice, but maintains he had an "absolute constitutional right" to do so, and counsel's deficient advice "is a structural defect in the proceeding" from which prejudice must be "presumed."

There is no reason to disagree with the PCR court's ruling that trial counsel rendered effective assistance of counsel in advising defendant of his

constitutional right to testify and defendant decided not to testify. See State v. Savage, 120 N.J. 594, 630-31 (1990) (holding a trial counsel is constitutionally ineffective when failing to adequately advise a defendant of the ramifications of both testifying and remaining silent). We are satisfied that the ruling is supported by credible evidence in the record, particularly the PCR court's determination that trial counsel was credible while defendant was not concerning counsel's advice to defendant not to testify. The record demonstrates trial counsel gave thorough and sound strategic advice that defendant should not have testified but it was defendant who decided not to testify.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0544-23